**ELIZABETHTOWN GAS COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

Washington Gas Light Company, Columbia Gas Transmission Corporation, Columbia Gas Distributing Companies, Commonwealth Natural Gas Corporation, and General Motors Corporation, Intervenors.

No. 76–1465.

United States Court of Appeals, District of Columbia Circuit.

Argued June 17, 1977.

Decided Jan. 26, 1978.

Rehearing Denied March 24, 1978.

**5.** *Petnel v. American Tel. and Tel. Co.,* 13 F.R.D. 249 (S.D.N.Y.1952).

John T. Miller, Jr., Washington, D. C., for petitioner.

Thomas M. Walsh, Atty., Federal Energy Regulatory Commission, for respondent. Drexel D. Journey, Gen. Counsel, Federal Energy Regulatory Commission, Robert W. Perdue, Deputy Gen. Counsel, Allan Abbot Tuttle, Sol., and John H. Burnes, Jr., Atty., Federal Energy Regulatory Commission, Washington, D. C., were on the brief, for respondent. John J. Lahey, Atty., Federal Energy Regulatory Commission, Washington, D. C., also entered an appearance for respondent.

Stephen J. Small, Washington, D. C., with whom Tilford A. Jones, Washington, D. C., was on the brief for intervenor, Columbia Gas Distribution Companies.

Edward J. Grenier, Jr., Richard P. Noland, Robert R. Morrow, Washington, D. C., Frazer F. Hilder and Julius Jay Hollis, Detroit, Mich., were on the brief, for intervenor, General Motors Corp.

John D. Daly, Giles D. H. Snyder, Leonard Sargeant, III, and William P. Saviers, Jr., Charleston, W. Va., were on the brief, for intervenor, Columbia Gas Transmission Corp.

Lewis Carroll, Monte R. Edwards and Susan A. Low, Washington, D. C., were on the brief, for intervenor, Washington Gas Light Co.

James O. Watts, Jr., Richmond, Va., entered an appearance for intervenor, Commonwealth Natural Gas Corp.

Before LEVENTHAL and ROBB, Circuit Judges, and RONALD N. DAVIES,* Senior United States District Judge for the District of North Dakota.

Opinion for the Court filed by LEVENTHAL, Circuit Judge.

LEVENTHAL, Circuit Judge.

In this case, we rule that the Federal Power Commission has the power to require compensation as part of a curtailment plan. We remand to the Federal Energy Regulatory Commission, as the successor to the FPC,** for consideration of whether such compensation should be provided.

The issue arises out of orders of the FPC relating to two successive interim curtailment plans for the interstate natural gas pipeline transmission system of Columbia Gas Transmission Corporation (Columbia). The appeal is by Elizabethtown Gas Co. (Elizabethtown), one of the public utilities that buys natural gas from Columbia for resale to consumers.

Elizabethtown opposed each of the plans on the ground that it unfairly failed to compensate the customers of Columbia which received less than their pro rata

---

* Sitting by designation pursuant to Title 28, U.S.C. § 294(d).

** See 42 U.S.C. § 7101 et seq., § 7295(c) (Supp. 1977).

share of gas. The Commission approved the plans, rejecting Elizabethtown's claim on the ground that it lacked jurisdiction under the Natural Gas Act to order or approve any curtailment plan that included a compensation feature. The appeals have been consolidated.

As indicated at the outset, in our view, the Commission does have the power to require compensation as part of a curtailment plan. We remand for a determination in appropriate proceedings whether or how this power should be exercised.

## I. PROCEDURAL BACKGROUND

The procedural background of these pending appeals is of considerable complexity. To aid reader understanding, we have presented that background in some detail in Appendix A to this opinion, and confine ourselves at this point to a brief statement that Elizabethtown contends that the interim curtailment plans approved by the FPC are unlawful (as constituting undue preference and for other reasons) because the plans do not provide a compensation feature, whereby purchasers who receive more than their pro rata share of gas pay a surcharge, and purchasers who receive less than their pro rata share of gas receive compensation out of the proceeds of the surcharges.

## II. COMMISSION'S AUTHORITY TO EMPLOY A COMPENSATION PROVISION

On the merits, these appeals pose the question whether the FPC was correct in its construction of the Natural Gas Act, when it determined that a compensation scheme is impermissible under the Act as a matter of law.

As set forth in Appendix A, the Commission's position emerged in these proceedings in the course of procedural rulings in the handling of a Columbia plan that contained

a compensation feature. Columbia then dropped the compensation feature ("under duress") in the next interim plan(s) proposed to the FPC, and those interim plans were in due course approved. The FPC has rejected Elizabethtown's petitions for rehearing, which sought a compensation feature, and in doing so has relied on its opinion in the *Transco* case.[1] Another opinion and order of the Commission to similar effect has been reversed by the Fifth Circuit and certiorari has been denied. *Mississippi Public Service Commission v. F P C,* 522 F.2d 1345 (5th Cir. 1975), *cert. denied,* 429 U.S. 870, 97 S.Ct. 181, 50 L.Ed.2d 149 (1976).

Although the procedural situation is complicated almost beyond belief, we find the issue on the merits to be relatively simple. In brief, we agree with the reasoning of Judge Bell in *Mississippi Public Service Commission,* and with his reliance upon the language of the Supreme Court in *F P C v. Louisiana Power and Light Company,* 406 U.S. 621, 92 S.Ct. 1827, 32 L.Ed.2d 1723 (1972).

In the latter case, the Court dealt with a somewhat different issue—that of the Commission's authority to regulate curtailment of direct interstate sales of natural gas— but its construction of the Act is relevant to the case at bar. In finding authority for such curtailment in the Commission's *transportation* jurisdiction, the Court noted that the Commission has broad powers to meet its responsibilities under that aspect of its jurisdiction. The Commission

must be free, "within the ambit of [its] statutory authority, to make the pragmatic adjustments which may be called for by particular circumstances." *F P C v. Natural Gas Pipeline Co.,* 315 U.S. 575, 586, 62 S.Ct. 736, 86 L.Ed. 1037 (1942). Section 16 of the Act assures the FPC the necessary degree of flexibility in providing that: "The Commission shall have the

---

1. Transcontinental Gas Pipeline Corporation, FPC Docket No. RP72–99, orders of Nov. 12, 1974 and Jan. 10, 1975. On appeal, as noted in Appendix A, this court did not reach the compensation issue, and Transcontinental has

sought certiorari on the ground that this court erred in its remands, and requirements for further consideration, without ruling on the compensation issue.

power to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of this act . . ." 15 U.S.C. § 717o. In applying this section, we have held that "the width of administrative authority must be measured in part by the purposes for which it was conferred . . . Surely the Commission's broad responsibilities therefore demand a generous construction of its statutory authority." *Permian Basin Area Rate Cases*, 390 U.S. 747, 776, 88 S.Ct. 2050, 20 L.Ed.2d 1379 (1968) . . .

406 U.S. at 642, 92 S.Ct. at 1839.

No compensation feature was involved in the curtailment plan at issue in *Louisiana Power and Light.* That case did, however, turn on an expansive view of the Commission's latitude to make "pragmatic adjustments which may be called for by particular circumstances," and the statutory grant of "necessary degree of flexibility" as necessary or appropriate to further the Congressional objective. In our view, this embraces the authority to employ a compensation feature as part of a curtailment plan where necessary or appropriate to promote the policies of the Natural Gas Act.[2]

Implicit in the Commission's handling of the case at bar is its view that it was inconsistent to require a purchaser to provide for compensation in order to obtain rights to· deliveries of natural gas when those deliveries were properly allocated to him. The Commission argues, for example, that a compensation scheme, by rewarding low priority users and penalizing high priority users, is "inconsistent with the theory and purpose of end use curtailment." (Br. at 20).

In human affairs generally our society owns a deep-seated conviction that, to use Emerson's words in the influential essay on Self-Reliance, a man should not be required to "pay for a privilege where [he has] intrinsic right." That principle does not answer the question, however; it rather bids us to focus on defining the "right" that is involved.

The decision that a system of priorities is mandated by fundamental policy considerations does not, in our view, necessarily imply that priority status should be entirely unburdened. The question of whether, and how, to provide compensation may well turn on the fairness of balancing the benefit accorded a high-priority purchaser with a charge that offsets, at least in part, the

**2.** *Cf. Cities Service Company v. F E A,* 529 F.2d 1016 (Em.App.1975), *cert. denied,* 426 U.S. 947, 96 S.Ct. 3166, 49 L.Ed.2d 1184 (1975), where the court was confronted with a problem of statutory interpretation similar to that of the case at bar, arising within the same general context of the national energy crisis. In finding that the F E A had authority under § 4(a) of the Emergency Petroleum Allocation Act of 1973, 87 Stat. 628, as amended, 15 U.S.C. § 753(a) (1976), to promulgate the Old Oil Entitlements Program, 10 C.F.R. § 211.67, the court held that "[a] proper interpretation of the Allocation Act and its provisions requires recognition of the fact that the authority under Section 4(a) must be read together with the objectives [set forth in Section 4(b)] which the exercise of that authority is to obtain." 529 F.2d at 1022.

In *Niagara Mohawk Power Corporation v. F P C,* 126 U.S.App.D.C. 376, 381–83, 379 F.2d 153, 158–60 (1967), this court held, more generally, that an act that entrusts a broad subject-matter to administration by an agency should be read to provide the agency with sufficient authority to implement the purposes and policies of Congress. "[T]he breadth of agency discretion is, if anything, at zenith when the action assailed relates primarily not to the issue of ascertaining whether conduct violates the statute, or regulations, but rather to the fashioning of policies, remedies and sanctions, including enforcement and voluntary compliance programs in order to arrive at maximum effectuation of Congressional objectives." *Id.* at 382, 379 F.2d at 159. [Citations omitted.] We further observed that "[t]he principles of equity are not to be isolated as a special province of the courts. They are rather to be welcomed as reflecting fundamental principles of justice that properly enlighten administrative agencies under law. The courts may not rightly treat administrative agencies as alien intruders poaching on the court's private preserves of justice. Courts and agencies properly take cognizance of one another as sharing responsibility for achieving the necessities of control in an·increasingly complex society without sacrifice of fundamental principles of fairness and justice." *Id.* at 383, 379 F.2d at 160. [Citations omitted.]

added expense imposed by a curtailment plan upon a lower-priority purchaser.[3] We do not attempt to resolve this question on the present facts. We hold, merely, that it is open to the Commission to consider employing a compensation feature.[4]

In order that the Commission may proceed, on the premise of legal authority, to consider whether and how a compensation feature should be or should have been included, we remand for further consideration by the Commission, in appropriate proceedings, of an interim curtailment plan.[5]

*So ordered.*[6]

## APPENDIX A: PROCEDURAL BACKGROUND

On December 15, 1971, Columbia filed with the Commission a curtailment plan providing for pro rata curtailment of large wholesale customers in the event of gas shortages. The plan included an exemption from curtailment to protect residential and commercial service, and a compensation provision to reimburse customers who might suffer greater than pro rata curtailment as a result of the exemption provision. After a period of suspension by the Commission, the plan was made effective on Columbia's motion as of April 1, 1972, and continued in effect until November 1, 1972.[1]

## 1972 INTERIM PLAN

On September 29, 1972, the Commission approved an interim settlement curtailment plan with similar provisions, to be effective until July 1, 1974. Under this plan, buyers who took advantage of the exemption provision to purchase more than their pro rata share of gas were subject to a surcharge on such exempt volumes of $1.65 per Mcf during the months of November through March, and 50¢ per Mcf during the months of April through October. The proceeds of this surcharge were to be used by Columbia to compensate the purchasers who, in ef-

**3.** The issue of fairness is an issue of policy for the Commission. Our function is only to consider the issue of law whether the Commission has the legal authority to implement that policy of fairness.

**4.** Our opinion in *State of Louisiana v. F P C,* 175 U.S.App.D.C. 104, 533 F.2d 1239 (1976), is not to the contrary. We there assumed, without deciding, that the Commission had authority to impose a compensation feature as a condition upon the granting of a certificate of public convenience and necessity, but held that no showing had been made, under the peculiar facts of that case, that the public interest required compensation. 175 U.S.App.D.C. at 110, 533 F.2d at 1245.

**5.** We do not vacate the orders of the Commission. The Commission may conclude that those orders should be retained. *Portland Cement Ass'n v. Ruckelshaus,* 158 U.S.App.D.C. 308, 486 F.2d 375 (1973); *Portland Cement Ass'n v. Train,* 168 U.S.App.D.C. 248, 513 F.2d 506 (1975).

**6.** Washington Gas Light Company filed a suggestion of mootness in No. 75–1767, based on the fact that no Columbia customer requested or took more than its pro rata share of gas during the period May 1, 1975 to October 31, 1975. (As explained in Appendix A, that is the period governed by the 1974 interim curtailment plan, as extended in time and modified to omit the compensation feature originally in Columbia's 1974 plan.)

Elizabethtown's response develops a contention that the 1974 plan, as modified, presents a live issue because its disposition affects the proper handling by the Commission of the 1975 plan.

In *American Smelting and Refining Co. v. F P C,* 161 U.S.App.D.C. 6, 494 F.2d 925 (1974), we held that the Commission, in remedying unjust or discriminatory rates, is required by § 5(a) of the Act to proceed in two steps, by finding, first, that an existing condition is unjust or discriminatory, and then prescribing the remedy for that condition. *Id.* at 21–22, 494 F.2d at 940–41. Under the approach there enunciated, the proponent of an existing plan would, indeed, enjoy some advantage deriving from considerations of burden of proof. But we dealt there with an existing plan; here, by contrast, the curtailment plan challenged in No. 75–1767 expired of its own force. Elizabethtown cannot, consequently, derive any procedural advantage from *American Smelting* on remand. Naturally, the Commission's findings of fact will be required to meet the substantial evidence test, and its action in settling upon a new interim curtailment plan must not be arbitrary or capricious. We believe these standards provide ample procedural protection for Elizabethtown.

The appeal in No. 75–1767 stands dismissed for mootness.

1. R. 360–62, 363–64, 364A, 364B.

fect, freed up the exempt volumes by receiving less than their pro rata share of gas.[2] The compensation feature was intended by Columbia to "provide[ ] an incentive for its customers to develop their own peak shaving facilities, . . . to preclude customers from requesting exempt volumes except when actually needed to protect firm non-industrial loads, and [to] compensate[ ] customers providing the exempt volumes for using their own peak shaving facilities."[3]

## 1974 INTERIM PLAN

On June 6, 1974, the Commission granted Columbia's motion to extend this interim curtailment plan until April 30, 1975.[4] However, on January 24, 1975, and March 25, 1975, the Commission, acting on the complaint of Washington Gas Light Company (WGL) (a customer of Columbia), issued orders reflecting a change in its appraisal of the compensation feature. While the mandate of these orders was simply to set a date for formal hearing of WGL's complaint, the Commission's language made it clear that it now regarded the compensation feature as illegal.[5]

Columbia's 1974 interim curtailment plan was due to expire on April 30, 1975. On April 1, 1975, Columbia filed a motion with petition for clarification of, or application for rehearing of the January 24 order) the Commission reiterated its position.

> We deny so much of the applications as seek to have us withdraw the language in the January 24, 1975, order relating to sales for resale in interstate commerce which may be attempted by Columbia's customers under the purported authority of our June 6, 1974, order approving Columbia's interim curtailment plan. We have determined that sales for resale between and among pipeline customers, even when attempted in the guise of "compensation features" of a curtailment plan, are subject to Sections 4 and 7 of the Natural Gas Act. See *Transco, supra; Northwest Pipeline Corp.,* Docket No. RP74-49, order issued February, 1975; *Consolidated Natural Gas Company,* Docket No. RP73-115, order issued January 15, 1975. We are without power to waive compliance with the statute itself; accordingly, any sales by and between Columbia's customers can lawfully be made only after compliance with the statute and regulations thereunder.
>
> We have not forbidden implementation of Columbia's interim curtailment plan; indeed we expect allocation of Columbia's supplies to be made in strict conformity therewith until expiration of the interim plan. We have attempted to make clear, however, that sales for resale among Columbia's customers are unlawful unless and until the requirements of Sections 4 and 7 have been met.

R. 895–96; J.A. at 282–83.

The *Transco* case, upon which the Commission relies in these passages, involved a curtailment plan with a compensation feature similar to that of the case at bar. The plan was filed by Transcontinental Gas Pipeline Corporation (Transco) in September 1974. The Commission found the compensation feature unlawful for reasons stated in the quoted passages of the Commission's orders in the present case.

---

2. Compensation was fixed at $1.65 per Mcf of curtailment in excess of ratable curtailment during the cold-weather months, provided that the excessively curtailed buyers or their distributor customers utilized all gas supply sources available, including peak shaving—and then only to the extent that peak shaving was utilized as a result of the additional curtailment. Otherwise, compensation during the cold weather months was at the rate of 50¢ per Mcf. Compensation during the warmer months was fixed at 50¢ per Mcf.

3. Record at 381 (hereinafter cited as R. ___).

4. R. 781–91.

5. The order of January 24, 1975, noted that the Commission had concluded in its orders of November 12, 1974 and January 10, 1975, in Transcontinental Gas Pipe Line Corporation (Transco), Docket No. RP 72–99, that

> a compensation plan similar to the one now before us was unacceptable as a matter of law because it is discriminatory, fixes rates unrelated to costs, and does not comply with the filing requirements of Sections 4 and 7 of the Natural Gas Act because the transfers would involve sales. It was further concluded that the compensation plan was unacceptable as a matter of policy because of its inherent inequity. The Commission recognized, however, that its position was subject to judicial review, and provided that notwithstanding the Commission's views as to unlawfulness the plan should remain in effect as provided by the Court of Appeals pending further order. Pending hearing and final decision, no change in Columbia's rates shall be effective, nor any transfer of entitlements among Columbia's customers be effectuated unless and until appropriate certificate and rate filings have been made and approved in accord with Sections 4 and 7 of the Act.

R. 874, J.A. at 276. And in its order of March 25, 1975 (formally a response to Columbia's

the Commission requesting an extension of that interim curtailment plan for six months.[6] In light of the Commission's new appraisal of the compensation provision, however, Columbia felt that it had "no alternative but to propose an extension of its interim plan as modified to exclude said compensation features."[7] Columbia expressed disagreement with the Commission's determination of illegality, but stated that it felt itself "under duress" of the Commission's orders.[8]

By order of April 25, 1975, the Commission granted Columbia's motion to extend the 1974 interim plan, (modified to delete the compensation feature) for a six-month period ending October 31, 1975.[9] Elizabethtown's application for rehearing was denied, and it filed an appeal with this court.[10]

## 1975 INTERIM PLAN

Because of continuing doubts as to when a permanent curtailment plan for Columbia would be approved, Columbia and Armco Steel Corporation presented to the Commission on July 2, 1975, competing proposals for a new interim curtailment plan, to take effect beginning November 1, 1975. Both of these proposals effected curtailment through a system of priorities of service (ranging from high-priority residential service to low-priority large-volume industrial boiler fuel use) rather than through the pro rata cutback approach, with exemptions, employed in Columbia's earlier curtailment plans. Elizabethtown opposed both proposals because of their failure to include a compensation provision to ameliorate what Elizabethtown regarded as disproportionate allocations of shortages.

By order of October 31, 1975, the Commission prescribed Columbia's 1975 Plan as an interim curtailment plan for the period November 1, 1975 through March 31, 1976 "and thereafter subject to further order of the Commission."[11] It rejected the contentions of Elizabethtown concerning the need for a compensation provision, referring to its previously expressed views on this matter.[12]

Elizabethtown applied for rehearing on the ground *inter alia,* that this curtailment plan created undue preferences, and lacked a compensation feature that would redress these preferences and induce the favored buyers to exercise self-help.[13]

Transco sought review of the Commission's determination in this court. On August 1, 1975, another panel of this court remanded the case to the Commission for further investigation of the need for curtailment. Subsequently, the case has returned to this court twice, and the panel has twice more remanded it, *Transcontinental Gas Pipe Line Corporation v. F P C,* No. 74–2036 (D.C. Cir. Feb. 6, 1976) (unpublished per curiam); *Transcontinental Gas Pipe Line Corporation v. F P C ,* 183 U.S.App.D.C. 145, 562 F.2d 664 (1976), without reaching the merits of the legality of the compensation provision. Following the most recent refusal of this court to decide the compensation issue. Transco sought Supreme Court review, 423 U.S. 326, 96 S.Ct. 579, 46 L.Ed.2d 533 (1977) (No. 76–1799), on the grounds that this court exceeded the proper scope of judicial review by ordering a remand to determine the "duration, shape, and causation" of the alleged gas shortage; and that the "duration, shape, and causation" of the shortage had no substantial bearing on the legality of the compensation scheme.

The Commission has suggested to the Supreme Court that it defer ruling on Transco's petition for certiorari until we decide the present case. Memorandum for the Federal Power Commission (in response to *Transco's* petition for a writ of certiorari) at 10–12, *Transcontinental Gas Pipe Line Corporation v. F P C,* No. 76–1799, 423 U.S. 326, 96 S.Ct. 579, 46 L.Ed.2d 533.

6. The matter of a permanent curtailment plan for Columbia was still pending before the Commission, but there was no chance that the Commission could issue an order on a permanent plan to become effective before the interim plan expired.

7. R. 898.

8. R. 905.

9. R. 1054–58; J.A. at 305–09.

10. *Elizabethtown Gas Co. v. F P C,* 183 U.S. App.D.C. 145, 562 F.2d 664.

11. R. 21487, J.A. at 527.

12. R. 21484, J.A. at 524A.

13. In its application for rehearing, Elizabethtown also argued that the Commission had improperly "rejected" the interim curtailment plan that was in effect through October 31, 1971. In the view of Elizabethtown, the Commission was constrained by *American Smelting and Refining Co. v. F P C,* 161 U.S.App.D.C. 6,

By order of March 26, 1976, the Commission denied Elizabethtown's application for rehearing. Elizabethtown filed an appeal with this court [14] asking that the Commission be required to institute a compensation feature, retroactive to November 1, 1975.

494 F.2d 925, 940–41 (1974), to expressly find unlawful the curtailment plan that expired on October 31, 1975, before "replacing" it with the priorities-of-service plan.

14. *Elizabethtown Gas Company v. F P C,* D.C. Cir. No. 76–1465.

